IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELBERT R. COMPTON,

                Plaintiff,                OPINION AND ORDER

v.

                                                  12-cv-915-wmc

WILLIAM POLLARD *et al.*,

                Defendants.

---

Plaintiff Elbert R. Compton is an inmate in the Wisconsin Department of Corrections. He has filed this proposed civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights in connection with the conditions of his confinement. Compton has been granted leave to proceed *in forma pauperis* and paid an initial partial filing fee, and so the next step is for the court to screen his complaint as required by the Prison Litigation Reform Act to determine whether it: (1) is legally frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A. After considering all of the pleadings, the court concludes that this case must be dismissed.

ALLEGATIONS OF FACT

In addressing any *pro se* litigant's pleadings, the court must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For purposes of

this order, the court accepts plaintiff's well-pleaded allegations as true and assumes the following probative facts:

- At all times relevant to his complaint, plaintiff Elbert R. Compton was an inmate confined at the Waupun Correctional Institution ("WCI").

- All of the defendants are employed by the Wisconsin Department of Corrections at WCI. William Pollard serves as warden; defendant Brian Greff is a program supervisor in WCI's Health and Segregation Complex ("HSC"); and Captain Olsen is a security supervisor.

- Compton suffers from an unspecified "serious medical condition" that requires him to take "prescription medication twice daily."

- On April 4, 2012, Compton was transferred to the HSC to serve a sentence of disciplinary segregation. During "medication period" at the HSC, a buzzer sounds to signal the distribution of prescription medication and inmates must be standing at the doorway to their cell when the officer arrives to dispense any prescribed dosage. Captain Olsen is "one of the individuals responsible for the creation and implementation" of this policy.

- On August 19, 2012, Compton was denied his medication because he was seated on his bed and not standing at his cell door when the officer distributing medications passed by his cell. Even though Compton "jumped up" and immediately asked for his medication, the officer refused to dispense it because Compton failed to comply with HSC policy.

- On August 29, 2012, Compton filed an inmate complaint (WCI-2012-20334) against this policy. (Compl. Ex. A (dkt. # 1-1) 1.) Thereafter, from August 29 through November 20, 2012, when Compton was released from the HSC, he was denied his prescription medication because he apparently refused to stand at the door during medication period.

- On September 7, 2012, Compton's inmate complaint was returned "unprocessed" for two reasons: (1) he did not identify a single issue for redress; and (2) he did not attempt informal resolution by contacting Greff as the program supervisor. (Compl. Ex. B (dkt. #1-1) 2.)

- Compton then wrote a letter to Greff,[1] complaining that he had been denied medication pursuant to the HSC policy. (Compl. Ex. C (dkt. #1-1) 3.) Greff

---

[1] A number of the dates supplied by Compton are inconsistent with the chronology of his complaint. Where possible, the court has adjusted the dates to conform with those shown on the supporting documentation attached to Compton's complaint. For example, while

2

    responded the next day, advising Compton to stand at his door at the time the correctional officer arrived "if he wanted his medication at medication time."

- On September 5, 2012, Compton submitted another complaint regarding the policy and stating that he had been denied his medication for at least 30 days because of it. (Compl. Ex. D (dkt. #1-1) 4.) This complaint was also returned unprocessed on September 13, 2012, because Compton did not clearly identify a single issue for redress. (Compl. Ex. E (dkt. #1-1) 5.)

- On September 21, 2012, Compton submitted yet another inmate complaint, again alleging that enforcement of the same policy had prevented him from receiving his medication for thirty days. (Compl. Ex. F (dkt. #1-1) 7.) This grievance was rejected as untimely on October 24, 2012. (Compl. Ex. G (dkt. #1-1) 8.) Compton appealed, arguing that the denial of medication was ongoing, but defendant Pollard affirmed the decision on November 5, 2012. (Compl. Exs. H & I (dkt. #1-1) 10-12.)

- Compton contends that the policy of requiring HSC inmates to be standing at the cell door to receive prescription medication caused him "unnecessary physical pain and suffering" without any legitimate penological interest. He seeks compensatory damages and declaratory relief.

## OPINION

Compton seeks relief for civil rights violations pursuant to 42 U.S.C. § 1983. To establish liability under § 1983, a plaintiff must establish that (1) he had a constitutionally protected right; (2) he was deprived of that right in violation of the Constitution; (3) the defendant intentionally caused that deprivation; and (4) the defendant acted under color of state law. *Cruz v. Safford*, 579 F.3d 840, 843 (7th Cir. 2009). Liberally construing Compton's complaint, Compton alleges that the HSC policy of requiring inmates to stand at the cell door to receive medication effectively denied him medical care in violation of the Eighth Amendment.

---

Compton claims that he complained about the HSC medication policy in a letter to Greff on "August 7, 2012, " Compton alleges that he was denied medication for the first time on "August 19, 2012." (*See* Signed Compl. (dkt. # 4) ¶¶ 4, 9).

3

Unfortunately for Compton, however, his pleadings effectively concede that he did not exhaust all available administrative remedies before filing his complaint in federal court as required by the PLRA. Generally, judges do not entertain affirmative defenses when conducting pre-service screening, but may do so at the screening stage "if [an affirmative defense] is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous." *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). Here, the documents Compton has submitted establish his failure to exhaust.

In the Seventh Circuit, "[e]xhaustion of administrative remedies . . . is a condition precedent to suit." *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *see also Perez v. Wis. Dep't of Corr.*, 183 F.3d 532, 535 (7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits"). The PLRA, 42 U.S.C. § 1997e(a), states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA also requires "proper exhaustion; that is, the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (internal quotation marks omitted). "If the prison's administrative authority rejects a complaint because the prisoner failed to use the prison grievance system properly, the prisoner runs the risk that his claim will be unexhausted

indefinitely." *Sanders v. Lundmark*, No. 11-cv-206-slc, 2011 WL 4699139, at *2 (W.D. Wis. Oct. 5, 2011) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

Here, Compton actually attaches his attempts at exhaustion, but those attempts are inadequate. His first two complaints were returned for failing to comply with prison procedures, and his final complaint was rejected as untimely. (*See* Compl. Exs. B, E, G (dkt. #1-1).) Since Compton's only complaint actually reviewed, as opposed to returned for reworking, was explicitly rejected solely on the basis of untimeliness, (Compl. Ex. G (dkt. #1-1) 8), it does "not fulfill the exhaustion requirement." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). The rejection was likewise affirmed on that basis alone. (Compl. Ex. I (dkt. #1-1) 12.) Therefore, Compton has failed to exhaust his administrative remedies, and the court cannot consider the merits of his claim.

Furthermore, even if Compton *had* exhausted his administrative remedies, his complaint fails to state a claim upon which relief can be granted. To state a claim for denial of medical care, plaintiff must allege that prison officials were deliberately indifferent to a serious medical need. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). First, Compton alleges *no* facts as to what his "serious medical need" is. He only alleges, in a single conclusory statement, that he "suffers from a serious medical condition." (Signed Compl. (dkt. #4) 2.) This is a mere legal conclusion that the court need not accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Beyond that vague, conclusory statement, Compton fails entirely to provide any facts

5

demonstrating, or allowing the court to infer, that he suffered from a serious medical condition. He does not offer details about his condition's effects, what medication he was prescribed, or any specific symptoms he experienced as the result of not receiving that medication. Ultimately, his allegations are wholly insufficient to show that officials failed to treat or interfered with treatment for a *serious* medical condition. Second, Compton has also failed to plead any facts suggesting that defendants actually *knew* he was at "substantial risk of serious harm," which is also required to state a claim for deliberate indifference, since (1) he has not alleged anything suggesting he *was* at risk, and (2) his only allegation with respect to defendants' knowledge is a conclusory statement that they "knew or should have known" of a risk to him. (Compl. (dkt. #4) ¶ 19.)

Second, a requirement that inmates stand ready to receive their medications seems reasonable on its face, unless physically or mentally unable to comply. Since Compton says nothing in his complaint about having an impediment to complying with the policy - indeed, pleads in a manner suggesting a deliberate decision not to comply out of protest - he fails to allege any constitutional violation. Even if the policy were in some way deemed or presumed unreasonable, it still does not permit an inference of "deliberate indifference."

ORDER

IT IS ORDERED that:

1. Plaintiff Elbert Compton's request for leave to proceed is DENIED and his complaint is DISMISSED with prejudice for failure to state a claim.

6

2. The dismissal will count as a STRIKE for purposes of 28 U.S.C. § 1915(g). (barring a prisoner with three or more "strikes" or dismissals for a filing a civil action or appeal that is frivolous, malicious, or fails to state a claim from bringing any more actions or appeals *in forma pauperis* unless he is in imminent danger of serious physical injury).

3. Although he has been found indigent, plaintiff is obligated to pay the remainder of the filing fee in monthly installments as set forth in 28 U.S.C. § 1915(b)(2). The clerk of court is directed to send a letter to the prison facility where plaintiff is in custody, advising the warden of his obligation to deduct payments from plaintiff's inmate trust fund account until the $350 filing fee has been paid in full.

Entered this 23rd day of April, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge